## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **COMPANION PROPERTY &** | § | |
| **CASUALTY INSURANCE CO.** | § | |
| *Plaintiff,* | § | **CIVIL ACTION NO.** _____ |
| | § | |
| **v.** | § | |
| | § | **JURY TRIAL DEMANDED** |
| **ANTHONY PALERMO,** | § | |
| **JAMES R. RAINES, and** | § | |
| **BREAZEALE, SACHSE & WILSON, L.L.P.** | § | |
| *Defendants.* | § | |

---

## PLAINTIFF'S ORIGINAL COMPLAINT

---

Plaintiff Companion Property & Casualty Insurance Co. ("Companion") files Plaintiff's Original Complaint.

### I.
### PARTIES

1.      Plaintiff Companion is a South Carolina insurance company with its principal office in Columbia, Richland County, South Carolina. Companion has issued a master workers compensation insurance policy that is and managed and operated by a third party administrator in Dallas, Dallas County, Texas.

2.      Defendant Anthony Palermo ("Palermo") is a natural person who resides in the State of Louisiana. Palermo is a non-resident who engages in business in the State of Texas, but does not maintain a regular place of business in Texas or a designated agent for service of process. This proceeding arises out of business and tortious acts conducted in Texas and to which the non-resident is a party. Pursuant to Rule 4 of the Federal Rules of Civil Procedure and sections 17.044(b), 17.045(a), 17.045(b), and 17.045(c) of the Texas Civil Practice and

Remedies Code, service of process shall be made upon the Secretary of State of the State of Texas with duplicate copies of process for the non-resident Anthony Palermo. The Secretary of State shall immediately send a copy thereof by registered mail or by certified mail, return receipt requested, to Anthony Palermo at One American Place, 23rd Floor, Baton Rouge, Louisiana 70821-3197.

3.     Defendant James R. Raines ("Raines") is a natural person who resides in the State of Louisiana. Raines is a non-resident who engages in business in the State of Texas, but does not maintain a regular place of business in Texas or a designated agent for service of process. This proceeding arises out of business and tortious acts conducted in Texas and to which the non-resident is a party. Pursuant to Rule 4 of the Federal Rules of Civil Procedure and sections 17.044(b), 17.045(a), 17.045(b), and 17.045(c) of the Texas Civil Practice and Remedies Code, service of process shall be made upon the Secretary of State of the State of Texas with duplicate copies of process for the non-resident James R. Raines. The Secretary of State shall immediately send a copy thereof by registered mail or by certified mail, return receipt requested, to James R. Raines at his home office address located at One American Place, 23rd Floor, Baton Rouge, Louisiana 70821-3197.

4.     Defendant Breazeale, Sachse & Wilson, L.L.P. ("BSW") is a Lousiana limited liability partnership with its principal place of business in the state of Louisiana. BSW is a non-resident who engages in business in the State of Texas, but does not maintain a regular place of business in Texas or a designated agent for service of process. This proceeding arises out of business and tortious acts conducted in Texas and to which the non-resident is a party. Pursuant to Rule 4 of the Federal Rules of Civil Procedure and sections 17.044(b), 17.045(a), 17.045(b), and 17.045(c) of the Texas Civil Practice and Remedies Code, service of process shall be made

upon the Secretary of State of the State of Texas with duplicate copies of process for the non-resident Breazeale, Sachse & Wilson, L.L.P.. The Secretary of State shall immediately send a copy thereof by registered mail or by certified mail, return receipt requested, to Breazeale, Sachse & Wilson, L.L.P. at its home office address located at One American Place, 23rd Floor, Baton Rouge, Louisiana 70821-3197.

## II.
## SUBJECT MATTER JURISDICTION

**5.**      Pursuant to 28 U.S.C. § 1332(a)(1), this court has jurisdiction over the subject matter of this action because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

## III.
## PERSONAL JURISDICTION & VENUE

**6.**      This Court may properly exercise personal jurisdiction over Defendants because Defendants have sufficient minimum contacts with the State of Texas, Plaintiffs' causes of action arise from or relate to Defendants' contacts with the State of Texas, Defendants have continuous and systematic contacts with the State of Texas, and the court's exercise of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice.

**7.**      Pursuant to 28 U.S.C. § 1391(a), Venue is proper in the Northern District of Texas because a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Texas.

## IV.
## BACKGROUND AND NATURE OF CASE

**8.**      This is a legal malpractice lawsuit arising out of a personal injury lawsuit filed by Jose Munoz Martinez ("Martinez"), a Texas resident, styled *Jose Munoz Martinez v. State*

*Roofing Co., Inc., et al.*, Cause No. 640-361 that was litigated in the 24th Judicial District Court, Parish of Jefferson, Louisiana (the "Underlying Lawsuit").

10.    In the Underlying Lawsuit, Martinez sued State Roofing Company, Inc. ("State Roofing") and others for personal injuries he sustained as a result of being electrocuted on or about February 27, 2006, while he was temporarily working at the Baywood Apartments on assignment from Texas to clean up damage caused by Hurricane Katrina.

11.    In the Underlying Lawsuit, Martinez alleges that he was employed by State Roofing at the time of his accident. Martinez was an employee based out of Houston, Texas.

12.    In the Underlying Lawsuit, State Roofing alleges that Martinez was covered by a workers' compensation policy issued by Companion, or by a commercial general liability insurance policy issued by Gemini Insurance Company ("Gemini").

13.    Companion provided workers compensation coverage under its policy number WC77779990001 for the policy period December 1, 2005, through December 1, 2006, for leased employees provided to State Roofing by AMS Staff Leasing in the State of Florida (the "Companion Policy").

14.    In the Underlying Lawsuit, State Roofing brought a third-party complaint against Companion and against Gemini alleging that, should Martinez carry his burden of proving the allegations of his petition, that the third party defendant should be liable to State Roofing for indemnity and contribution.

15.    Companion hired Aspen Administrators, Inc. ("Aspen"), a Texas corporation based in Dallas, Texas, to oversee and administer the claim asserted by Martinez and to manage the claims asserted by State Roofing against Companion.

**16.** Aspen hired BSW to provide legal representation to Companion in the Underlying Lawsuit. All communications between Companion and BSW occurred through Aspen's office in Dallas, Texas.

**17.** BSW assigned the legal representation of Companion in the Underlying Lawsuit to Palermo, one of its attorneys.

**18.** BSW assigned Raines to assist Palermo with the legal representation of Companion in the Underlying Lawsuit.

**19.** Palermo, Raines, and BSW provided legal representation to Companion in the Underlying Lawsuit.

**20.** Providence Property and Casualty Insurance Company ("Providence") provided workers compensation to leased employees provided by AMS Staff Leasing to State Roofing under its policy number WC01114-002LA-105 for the policy period January 17, 2006, through December 1, 2006, in the State of Louisiana (the "Providence Policy").

**21.** Providence subsequently became known as Park Avenue Property and Casualty Insurance Company.

**22.** In connection with the legal services provided to Companion in the Underlying Lawsuit, Palermo reviewed the insurance policies supplied by Aspen issued by Providence and Companion.

**23.** On August 6, 2009, Palermo wrote a letter to State Roofing's attorney advising him that the proper policy to cover State Roofing in the Underlying Lawsuit was the Providence policy.

**24.** The proper workers compensation policy to cover State Roofing in the Underlying Lawsuit was the Providence policy.

**25.** On October 19, 2009, Palermo negligently allowed a Consent Judgment to be entered against Companion in the Underlying Lawsuit stating that Companion agreed "to immediately and fully indemnify and defend State Roofing from any judgments, orders, claims demands, losses, penalties, attorney fees, interest, or otherwise which State Roofing has incurred and or has actual and/or potential liability for and/or incurred in any manner whether alleged by any party, including but not limited to Jose Munoz Martinez, with regards to any workers' compensation claims" in the Underlying Lawsuit.

**26.** Raines signed the Consent Judgment.

**27.** At the time that Raines signed the Consent Judgment and Palermo allowed it to be entered against Companion in the Underlying Lawsuit, Palermo was aware that the proper policy covering State Roofing for any workers' compensation claims made by Martinez in the Underlying Lawsuit was the Providence policy, not the Companion policy.

**28.** At the time that Raines signed the Consent Judgment, Raines was aware that the proper policy covering State Roofing for any workers' compensation claims made by Martinez in the Underlying Lawsuit was the Providence policy, not the Companion policy

**29.** At the time that Raines signed the Consent Judgment, Raines should have known that the proper policy covering State Roofing for any workers' compensation claims made by Martinez in the Underlying Lawsuit was the Providence policy, not the Companion policy.

**30.** Palermo, Raines, and BSW did not notify Companion in writing in advance that they intended to allow the Consent Judgment to be entered against Companion

**31.** Palermo, Raines, and BSW did not notify Companion in advance that they intended to allow the Consent Judgment to be entered against Companion

**32.**    Palermo, Raines, and BSW did not notify Aspen in writing in advance that they intended to allow the Consent Judgment to be entered against Companion

**33.**    Palermo, Raines, and BSW did not notify Aspen in advance that they intended to allow the Consent Judgment to be entered against Companion.

**34.**    Companion did not agree or authorize the Defendants to enter into the Consent Judgment.

**35.**    Aspen did not agree or authorize the Defendants to enter into the Consent Judgment.

**36.**    Palermo, Raines and BSW did not receive permission from Companion to allow the Consent Judgment to be entered.

**37.**    Palermo, Raines, and BSW did not receive permission from Aspen to allow the Consent Judgment to be entered.

**38.**    Raines did not receive permission from Companion to sign the Consent Judgment on its behalf.

**39.**    Raines did not receive permission from Aspen to sign the Consent Judgment on Companion's behalf.

**40.**    Raines did not have express authority to sign the Consent Judgment on Companion's behalf.

**41.**    After the Consent Judgment was signed by the court in the Underlying Lawsuit, Providence was placed into receivership in the State of Oklahoma.

**42.**    The Consent Judgment states that Companion agrees that Palermo will enroll as co-counsel for State Roofing to defend State Roofing on any and all workers' compensation claims made by Martinez.

**43.** Palermo did not request or obtain consent from Companion or Aspen to represent State Roofing in the Underlying Lawsuit.

**44.** Palermo did not disclose to Companion or Aspen the existence, nature, implications, and possible adverse consequences of his representation of State Roofing in the same litigation in which he was representing Companion.

**45.** After the Consent Judgment was signed, Palermo, and other attorneys employed by BSW, provided legal representation to State Roofing in the Underlying Lawsuit and billed Companion for attorney fees and litigation expenses incurred in the representation of State Roofing. The Consent Judgment obligated Companion to pay two different law firms to defend State Roofing in the underlying lawsuit.

**46.** On February 27, 2010, State Roofing's attorneys demanded that Companion pay $95,343.80 for defense costs incurred by State Roofing in the Underlying Lawsuit pursuant to the Consent Judgment.

**47.** Thereafter, State Roofing's attorneys periodically demanded that Companion pay additional sums for defense costs incurred by State Roofing in the Underlying Lawsuit pursuant to the Consent Judgment, in addition to the amounts billed to Companion by BSW.

**48.** Because of the Consent Judgment in the Underlying Lawsuit, Companion paid $88,441.84 from Dallas, Texas, to State Roofing's attorneys for attorney fees and $2,778.70 for litigation expenses incurred by State Roofing in the Underlying Lawsuit.

**49.** Because of the Consent Judgment, Companion paid $211,302.00 from Dallas, Texas, to Martinez to settle his claim against State Roofing in the Underlying Lawsuit.

**50.** Companion incurred attorney fees with BSW in the amount of $79,007.23 in connection with the defense of the Underlying Lawsuit. Companion had paid BSW some fees from Dallas, Texas, and disputed unpaid fees.

**51.** Upon learning of the entry of the Consent Judgment without its permission, it was reasonable for Companion to terminate Palermo and BSW, and to retain substitute counsel to protect its interests in the Underlying Lawsuit. Companion incurred additional attorney fees of $38,203.97 with substitute counsel, plus $15,398.53 with the undersigned law firm, to protect its interests. All fees were paid from Dallas, Texas.

**52.** Companion has sustained actual damages of at least $435,132.28 as a result of the entry of the Consent Judgment in the Underlying Lawsuit.

## V.
## CAUSE OF ACTION

**Cause of Action – Legal Malpractice**

**53.** There was an attorney-client relationship between Companion, as client, and Palermo and Raines as attorneys.

**54.** Palermo and Raines owed to Companion the duty to perform legal services in the Underlying Lawsuit with the standard of care that would be exercised by a reasonably prudent attorney.

**55.** Palermo and Raines breached their duty of care by virtue of their respective acts and omissions, including the following:

    (1)    Agreeing to the Consent Judgment.

    (2)    Signing the Consent Judgment.

    (3)    Allowing the court to enter the Consent Judgment.

(4)     Failing to advise Companion that they intended to agree to the Consent Judgment when Providence was the applicable carrier.

(5)     Failing to advise Companion that they intended to sign the Consent Judgment.

(6)     Failing to advise Companion that they intended to allow the court to enter the Consent Judgment.

(7)     Failing to secure permission from Companion to agree to the Consent Judgment.

(8)     Failing to secure permission from Companion to sign the Consent Judgment.

(9)     Failing to secure permission from Companion to allow the court to enter the Consent Judgment.

(10)    Failing to review and explain the Consent Judgment to Companion in advance.

(11)    Raines failing to ascertain that the proper policy covering State Roofing for any workers' compensation claims made by Martinez in the Underlying Lawsuit was the Providence policy, if he did not know this information before signing the Consent Judgment.

(12)    Failing to immediately notify the court in the Underlying Lawsuit that the Consent Judgment was signed without permission.

(13)    Failing to take steps to set aside the Consent Judgment.

These acts and omissions violate the standard of care owed to Companion by Palermo and Raines as attorneys.

**56.**    The negligence of Palermo and Raines proximately caused Companion to incur damages in excess of the minimum jurisdictional limits of this court of at least $435,132.28, .

**Cause of Action – Breach of Fiduciary Duty (Self-Dealing)**

**57.**    Palermo and Raines had a fiduciary relationship with Companion.

**58.**    Palermo and Raines owed fiduciary duties to Companion, including the duty of loyalty and utmost good faith, the duty to refrain from self-dealing, and the duty of full disclosure.

**59.**     Palermo and Raines breached their fiduciary duties to Companion by virtue of their respective acts and omissions, including the following:

(1)     Agreeing to the Consent Judgment.

(2)     Signing the Consent Judgment.

(3)     Allowing the court to enter the Consent Judgment.

(4)     Failing to advise Companion that they intended to agree to the Consent Judgment when Providence was the applicable carrier.

(5)     Failing to advise Companion that they intended to sign the Consent Judgment.

(6)     Failing to advise Companion that they intended to allow the court to enter the Consent Judgment.

(7)     Failing to secure permission from either Companion to agree to the Consent Judgment.

(8)     Failing to secure permission from either Companion to sign the Consent Judgment.

(9)     Failing to secure permission from either Companion to allow the court to enter the Consent Judgment.

(10)     Failing to review and explain the Consent Judgment to Companion in advance.

(11)     Including in the Consent Judgment a provision that Palermo will enroll as co-counsel for State Roofing to defend State Roofing on any and all workers' compensation claims made by Martinez .

(12)     Failing to disclose to Companion the existence, nature, implications, and possible adverse consequences of his representation of State Roofing in the same litigation in which he was representing Companion.

(13)     Billing Companion for legal services rendered on behalf of State Roofing in the Underlying lawsuit.

(14)     Placing Companion in the position that it would be obligated to pay two separate law firms to defend State Roofing in the underlying case at the same time.

These acts and omissions breached the fiduciary duties owed to Companion by Palermo and Raines as attorneys.

60.     The breach of fiduciary duties by Palermo and Raines proximately caused Companion to incur damages in excess of the minimum jurisdictional limits of this court of at least $435,132.28.

## VI.
## PARTICIPATORY & VICARIOUS LIABILITY

**Vicarious Liability**

61.     Both Palermo and Raines were acting as members of BSW at the time of their acts and omissions representing Companion in the Underlying Lawsuit.   Accordingly. BSW is vicariously liable for their negligence with respect to Companion.

62.     To the extent that any defendant claims that any responsibility for the legal representation of Companion in the Underlying Lawsuit was delegated to non-lawyer employees of BSW, any acts of such non-lawyer employee were committed within the scope of the general authority of the employee in furtherance of the attorney's business and for the accomplishment of the object for which the person was employed.   Accordingly, Palermo, Raines, and BSW are liable for any legal malpractice of non-lawyer employees of BSW.

## PRAYER

Based upon the foregoing, Companion prays that Defendants Palermo, Raines, and BSW be summoned to appear and answer this complaint, and that upon trial, this Court grant judgment in favor of Companion against Defendants Palermo, Raines, and BSW, jointly and severally, for their actual damages.   Companion prays for court costs and for general relief.

Dated: December **21**, 2011.

Respectfully submitted,

**REID & DENNIS, P.C.**
Tollway Towers South, Suite 1400
15660 Dallas Parkway
Dallas, Texas 75248-3328
(972) 991-2626 (Telephone)
(972) 991-2678 (Facsimile)

_____*/s/ William E. Reid*_____
**William E. Reid**
State Bar No. 16748500
wreid@reiddennis.com

**John M. Frick**
State Bar No. 07455200
jfrick@reiddennis.com

**ATTORNEYS FOR PLAINTIFF**
**COMPANION PROPERTY &**
**CASUALTY INSURANCE CO.**